IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| THOMAS DEWEY EASTON,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID J. SHULKIN, in his official capacity as the Secretary of U.S. Department of Veterans Affairs, CAROLINE M. HOWELL, FNP, individually and in her official capacity as employee of Veterans Affairs Eugene Clinic, KRISTOPHER G. KYES, individually and in his official capacity as DMV/Medical Programs Coordinator, and OREGON DOT/DMV,<br><br>    Defendants. | Case No. 6:18-cv-00233-AA<br>**OPINION AND ORDER** |

AIKEN, Judge:

Plaintiff Thomas D. Easton brings this action against defendants Kristopher G. Kyes and Oregon Department of Transportation/Department of Motor Vehicles ("Oregon DOT/DMV") (collectively, "state defendants") as well as defendants Caroline M. Howell, FNP, and David J.

Shulkin (collectively, "federal defendants"[1]) for wrongfully depriving plaintiff of his Oregon driver's license. State defendants have moved to dismiss all claims asserted against them. For the reasons stated below, the Motion to Dismiss (doc. 10) is GRANTED, and the claims against the state defendants are dismissed.

## BACKGROUND

Plaintiff is an 82 year old veteran of the U.S. Air Force and Navy, and received medical care at Veterans Affairs' Eugene Health Care Center in Eugene, Oregon. On November 6, 2017, Howell, plaintiff's primary care provider, reported plaintiff to the Oregon DOT/DMV under Oregon's mandatory referral program for medical impairments. Howell asserted that plaintiff refused to take necessary blood pressure medication and was thus a serious risk to the public while driving:

> 82 year old male veteran presents to clinic at risk for sudden death due to persistent malignant hypertension (Blood pressure greater than 200/100). Veteran has been counseled he is at risk of sudden stroke or heart attack when driving and at risk to other individuals on the road as long as he refuses treatment.

Pl.'s Resp. to State Def. Mot. to Dismiss, Ex. B, pp. 4

State defendants took action on this referral and suspended plaintiff's driver's license effective November 27, 2017. Plaintiff filed an online request for a hearing on the same day. On December 22, 2017, plaintiff appeared before the Oregon Office of Administrative Hearings to contest the suspension of his license. There, plaintiff asserted that the chronic malignant hypertension diagnosis was "bogus" as the condition "involv[es] the failure of three organs and requires immediate hospitalization," symptoms that plaintiff did not suffer. Pl.'s Am. Compl. ¶ 21.

---

[1] Federal defendants have not yet appeared in this action.

Page 2 - OPINION AND ORDER

On February 5, 2018, plaintiff filed the present action with this Court, naming only the federal defendants. On February 12, 2018, plaintiff amended his complaint to include the state defendants. Plaintiff alleges claims under 42 U.S.C. § 1983 and state law, asserting that deprivation of his driver's license without a prior hearing violated his due process rights. Soon after this date, plaintiff received the Administrative Law Judge's final order directing Oregon DOT/DMV to continue suspension of plaintiff's license.

State defendants filed this Motion to Dismiss, which seeks dismissal of all plaintiff's claims against them, on March 30, 2018. At hearing before this Court on April 30, 2018, plaintiff represented that he intends to file a petition for judicial review of the Administrative Law Judge's order. The Court ordered consideration of motions to be stayed pending a settlement conference before Magistrate Judge Thomas Coffin. Settlement efforts were ultimately unsuccessful.

## STANDARD OF REVIEW

State defendants move for dismissal due to plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive the motion to dismiss, plaintiff's pleading must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 545 (2007). In considering the motion, this Court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales,* 474 F.3d 665, 667 (9th Cir. 2007).

Although the pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

U.S. at 555); *see also* Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## DISCUSSION

I.   *Plaintiff's Claims Against Defendant Oregon DOT/DMV*

States are generally immune from suit in federal court. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. Eleventh Amendment immunity extends to state entities that are "arms of the state." *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). To determine whether an entity is an arm of the state, this Court examines five factors:

> whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has the power to take property in its own name or only the name of the state, and the corporate status of the entity.

*Id.* (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982)).

This first *Mitchell* factor is the most important. *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 929 (9th Cir. 2017). "[T]he relevant inquiry is whether [the state] will be legally required to satisfy any monetary judgment" obtained against the agency. *Id.* (quoting *Eason v. Clark Cty. Sch. Dist.*, 303 F.3d 1137, 1142 (9th Cir. 2002)).

Or. Rev. Stat. § 278.120 provides, in part, "The [Oregon Department of Administrative Services] shall pay from the Special Liability Revolving Fund authorized in ORS 278.150 or the Insurance Fund the amount of any judgment" against the state and its officers, employees, or agents arising under the Oregon Tort Claims Act ("OTCA"). Or. Rev. Stat. § 278.120(1). Under

Oregon law, Oregon DOT/DMV is the "state" for purposes of OTCA claims. The Special Liability Revolving Fund is drawn directly from the state treasury and "shall be carried with the State Treasury." Or. Rev. Stat. § 278.150. This fund "shall be used by the [Oregon Department of Administrative Services] when it is necessary or desirable to make immediate payments on liability claims." *Id.* Oregon law requires the state treasury to satisfy monetary judgments against Oregon DOT/DMV. For this reason, the first *Mitchell* factor weighs very strongly in favor of finding sovereign immunity for Oregon DOT/DMV.

Next, I examine whether Oregon DOT/DMV performs central government functions. An entity performs a central government function if it addresses "a matter of statewide rather than local or municipal concern," *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 253 (9th Cir. 1992), and "the state exercises centralized governmental control over the entity," *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1044 (9th Cir. 2003). *See Beentjes v. Placer Cty. Air Pollution Control Dist.*, 397 F.3d 775, 782 (9th Cir. 2005). Oregon DOT/DMV's duties include providing strategic planning for statewide transportation systems; coordinating major transportation projects between the state, cities, and counties; and maximizing the state's prospects of receiving federal transportation funds. Or. Rev. Stat. § 184.615(2). The statute's language clearly charges Oregon DOT/DMV with statewide concerns.

Oregon DOT/DMV performs under the supervision of the Director of Transportation, appointed by the Oregon Transportation Commission. Or. Rev. Stat. § 184.620(1). Members of the Oregon Transportation Commission, in turn, are appointed by the Governor, subject to approval by the Senate, and serve at the Governor's pleasure. Or. Rev. Stat. § 184.612(1). A more explicit exercise of "central government authority" over an entity is hard to imagine.

Oregon DOT/DMV unquestionably performs a central government function under the *Beentjes* analysis. This factor weighs heavily in favor of sovereign immunity for Oregon DOT/DMV.

Now, I turn to the remaining *Mitchell* factors. Oregon DOT/DMV may sue and be sued, Or. Rev. Stat. § 184.689(1), and it thus fails the third *Mitchell* factor. This factor weighs only slightly against a finding of sovereign immunity because the third factor is entitled to less weight than the first two factors. *Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1188 (9th Cir. 2003). Additionally, Oregon DOT/DMV may take title to property in its own name. *See Or. Rev. Stat.* §§ 184.627, 184.689. Thus, Oregon DOT/DMV fails the fourth *Mitchell* factor.

The final *Mitchell* factor concerns the corporate status of Oregon DOT/DMV. Specifically, this factor concerns the "extent to which the [entity] is an entity distinct from the state." *Holz*, 347 F.3d at 1188. Oregon law explicitly designates Oregon DOT/DMV a part of the state government, at least for the purposes of the OTCA. *See* Or. Rev. Stat. § 30.260. As discussed above, Oregon DOT/DMV operates under the control of the Governor. Additionally, Oregon DOT/DMV may not issue bonds in its own name. Or. Rev. Stat. § 367.030(1) ("[T]he State Treasurer may, at the request of the Department of Transportation, issue revenue bonds of the State of Oregon."). Courts of this Circuit have regularly found an entity's ability to issue its own bonds to strongly suggest legal independence. *See, e.g., Durning v. Citibank, N.A.*, 950 F.2d 1419, 1428 (9th Cir. 1991). While the inverse finding is not necessarily dispositive, it is a factor that weighs in favor of legal dependence. Considering Oregon law's treatment of Oregon DOT/DMV, this Court finds that Oregon DOT/DMV is not a corporate entity distinct from the state and therefore satisfies the fifth *Mitchell* factor.

The first, second, and fifth *Mitchell* factors together weigh heavily in favor of sovereign immunity. The third and fourth factors fail to counteract this weight. In light of this, this Court

holds that Oregon DOT/DMV is an arm of the state of Oregon and is entitled to sovereign immunity.

Having initially found that Oregon DOT/DMV are entitled to sovereign immunity, I must next address plaintiff's argument that the agencies have waived sovereign immunity under these facts. It is undisputed that a state or arm of the state may nevertheless be subject to suit in federal court under certain circumstances. *Durning*, 950 F.2d at 1423. The state may consent to be sued, thereby waiving its sovereign immunity. *Id.* Alternatively, Congress may abrogate a state's sovereign immunity under its Fourteenth Amendment powers. *Id.*

A state's consent to suit in federal court must be unequivocally expressed in the text of a statute. *Pennhurst*, 465 U.S. at 99. "A waiver 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Sossamon v. Texas*, 563 U.S. 277, 278 (2011) (citing *Lane v. Peña*, 518 U.S. 187, 192 (1996)). A state's waiver of sovereign immunity in state courts does not necessarily amount to a waiver of sovereign immunity in federal courts. *Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 473 (1987) (plurality opinion).

Plaintiff points to the OTCA as manifesting Oregon's consent to be sued in federal court. However, plaintiff's reliance is misplaced. The OTCA does not contain the precise language needed to waive Oregon's sovereign immunity in federal court; in fact, it does not mention the federal courts whatsoever. *See, e.g., Sossamon*, 563 U.S. at 278 (finding the phrase "appropriate relief against a government" insufficient to waive sovereign immunity). Rather, the language of the statute operates as a limited waiver of sovereign immunity in Oregon's own state courts. This finding is consistent with other courts of this District. *See, e.g., AT&T Commc'ns-E., Inc. v. BNSF Ry. Co.*, 2006 WL 3408035, *4 (D. Or. Nov. 27, 2006); *Strubel v. United States*, 2004 WL

1919992, *2-3 (D. Or. Aug. 25, 2004). Therefore, I find that the OTCA does not act as a waiver of Oregon's sovereign immunity in federal courts.

Congress may also abrogate states' sovereign immunity pursuant to its Fourteenth Amendment enforcement powers. *Welch*, 483 U.S. at 474. Here, plaintiff brings his cause of action under 42 U.S.C. § 1983. Section 1983 does not manifest a congressional intent to abrogate state sovereign immunity. *Will v. Mich. Dep't of State*, 491 U.S. 58, 66 (1989) ("Section 1983 ... does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."). Congress has not abrogated Oregon's sovereign immunity for any issues raised in this suit.

In sum, Oregon DOT/DMV is an arm of the state and as such is entitled to sovereign immunity. Oregon DOT/DMV has not waived its immunity to suit in federal court. Congress has similarly not abrogated Oregon's sovereign immunity in this context.[2] All charges against Oregon DOT/DMV must be dismissed.

II. *Plaintiff's Claims Against Defendant Kyes*

Plaintiff also brings § 1983 and state tort claims against Kyes in both his individual capacity and his official capacity as Medical Programs Coordinator for Oregon DOT/DMV.

Plaintiff's claims against Kyes in his official capacity can be disposed of quickly. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office ... As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71. Kyes' office is Oregon DOT/DMV. As discussed above, Oregon DOT/DMV enjoys sovereign immunity. Because Oregon DOT/DMV is the "real party in

---

[2] Because plaintiff has not directly alleged that any Oregon statute violates the Constitution, the Court does not analyze the claims under the *Ex parte Young* doctrine. 209 U.S. 123 (1908).

interest" in this claim against Kyes, the claim is proscribed by the Eleventh Amendment. *See Durning*, 950 F.2d at 1423.

Plaintiff further asserts state law tort claims as well as § 1983 claims against Kyes in his individual capacity. First, I address plaintiff's state law tort claims for intentional and negligent infliction of emotional distress. A claim against an official is actually a claim against the state if the state is the real party in interest. *Will*, 491 U.S. at 71. Under the OTCA, public bodies must indemnify their employees "against any tort claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of duty." Or. Rev. Stat. § 30.285. This does not apply in cases of "malfeasance in office or willful or wanton neglect of duty." *Id.* That Kyes's alleged act or omission occurred in the performance of his duty is undisputed. Though plaintiff alleges that Kyes acted in bad faith or with gross negligence, he alleges no facts to support this bare allegation. Plaintiff does allege that defendant Kyes had a duty to "educate himself by also consulting a physician, or at least the internet." Pl.'s Opp. to Mot. to Dismiss 5. While the existence of this duty is doubtful in itself, I note that Kyes accepted the medical opinion of Howell, the referring Nurse Practitioner. Kyes met plaintiff's proposed legal duty. Plaintiff does not allege any other facts related to Kyes' conduct. Simply put, plaintiff fails to allege any facts that would disqualify Oregon DOT/DMV from indemnifying defendant Kyes under the OTCA. As such, Oregon DOT/DMV is the real party in interest, and the claims are barred by the Eleventh Amendment.

I now turn to plaintiff's § 1983 claims against Kyes. Plaintiff alleges that Kyes violated plaintiff's due process rights under the Fifth Amendment by causing plaintiff's license suspension. To properly plead a § 1983 claim, plaintiff must allege facts demonstrating a constitutional violation. 42 U.S.C. § 1983. Plaintiff has failed to carry this burden because the

nature of the alleged harm is not a constitutional violation. *See Mackey v. Montrym*, 443 U.S. 1, 2 (1975). In *Mackey*, the Supreme Court balanced several factors and held that Massachusetts' summary suspension procedures for driver's licenses were constitutional. *Id.* Massachusetts' procedures were strikingly similar to Oregon's: a driver's license could be summarily suspended if the driver was determined to be a threat to public safety; a post-suspension hearing was immediately available; the state had a compelling interest in highway safety that the procedures served. *Id.* The State of Oregon employed substantially similar procedures and rationales here; therefore, the facts as alleged do not show a constitutional violation. As such, plaintiff has alleged no constitutional violation.[3] Thus, plaintiff's § 1983 claim against defendant Kyes must be dismissed as well.[4]

## CONCLUSION

State defendants' Motion to Dismiss (doc. 10) is GRANTED. Plaintiff's claims against state defendants are dismissed, with prejudice. Accordingly, Plaintiff's Motion for Partial Summary Judgment (doc. 13) must also be DENIED.

IT IS SO ORDERED.

Dated this 9th day of October 2018.

Ann Aiken
U.S. District Judge

---

[3] Because plaintiff's § 1983 claim does not pass this threshold requirement, the Court does not address if Kyes is entitled to qualified immunity. However, the Court notes that Kyes would likely be so entitled under *Pearson v. Callahan*, 555 U.S. 223 (2009), because his conduct did not violate clearly established law.

[4] Plaintiff represents that he is prepared to pursue an appeal to his driver's license suspension in state court by filing a Petition for Judicial Review of Final Opinion. Though the Court does not need to reach the issue here, I note that *Younger* abstention would likely apply if that suit were to proceed. *Younger v. Harris*, 401 U.S. 37 (1971).